Good morning. May it please the court. My name is Elizabeth Johnson and I'm representing the appellant Jeremiah Ruhl in this case. At the time that Mr. Ruhl was indicted, he had exactly one felony conviction in the state of Vermont for forgery based on the issuance of less than $5,000 in bad checks. That is not enough to make Mr. Ruhl someone who is so dangerous that he can constitutionally be life, be prohibited for the rest of his life from owning a firearm. And for that reason- What district court's plain error was? Thank you, Your Honor. I believe that the plain error is that after Bruin, it is clear that in order to uphold this kind of ban on firearms possession, there has to be a detailed historical analysis of whether in a federal prosecution at the time of the founding, this was a reason that was allowed for removing someone's weapon. And there is no such historical precedent that justifies that. But is the question of law that you're asking us to create, that a court has to stew a sponte in engaging this kind of analysis when it's not being presented to the public? I mean, there are definitely court decisions that suggest that. The Tenth Circuit says that Bruin simply requires this, and if you don't do it, you are dodging those requirements. The Second Amendment right is now, according to the Supreme Court, an individual right. It's not a second-class right. It's something that you can't take away lightly. And this statute permits guns to- Is there a decision of the Supreme Court of the United States that holds that no, that the law prohibiting felons from possessing firearms is unconstitutional as applied to nonviolent felons? Not today, there isn't, Your Honor. Is there a case of this circuit that holds that? Not today, there isn't, Your Honor. So as of today, it is a plain error for the district court to have applied that statute? Neither of those courts have considered this issue at all. So if we haven't considered it at all, how can we say that it is a plain error? This court has previously found questions of first impression in this court to be matters of plain error, looking at the change in the law above. So it is possible to do that. And you think that Bruin makes it plain that the felon in possession statute is unconstitutional? I think that the historical analysis that Bruin requires to be done to justify a prohibition on firearms possession to take away someone's Second Amendment rights makes it clear that Mr. Rule cannot constitutionally be deprived of a gun. But the Supreme Court is currently considering whether something that seems to me far more removed from anything that was considered to be the case at the time of the founding, prohibiting weapons possession by someone who has not been convicted of a felony but is under a protective order in a domestic violence case. And it didn't sound to me from the oral argument transcript in that case that the Supreme Court said, no-brainer, we're going to be knocking this out immediately because it's plain and obvious what the answer is. I think, though, Your Honor, that that is a different set of facts in the relevant way that they are different here, is that I don't think there was absolutely no question that Mr. Rahimi, in that case, was a dangerous person. There was a finding by a court that he was a dangerous person and he was dangerous to at least one specific human being. And what I think the court- And what is the historical analog for prohibiting possession of firearms by someone who is dangerous to one particular person? The question there, I think, and this is something that the Supreme Court clearly was wrestling with in Rahimi, is how specific does- what's the category that we're looking at? Is it dangerousness or is it specific kind of dangerousness? You got it. That's exactly what is left entirely open. So is it left entirely open what makes someone a dangerous person to have a firearm? So it seems to me that there are two things that we have a problem with. One is we want to wait until we hear what the Supreme Court says in Rahimi. And then we turn to the long queue of cases awaiting Rahimi in this case and systematically work our way through those and make these determinations. And it may well be that by the time we get to this case, it will be plain that the district court committed error, which it's hard for me to say that it is today. I think that to the extent there is an agreement about what the state of the law is, it is that there is probably- there is historical support for removing weapons from people who  And there's a question over whether that is a threat of general dangerousness or dangerousness to a specific person or what I think and what I think the law's- what the historical record supports frankly is removing guns from people who are a danger to the state. Mr. Rule is none of those things. He is- So maybe- may I ask a question slightly different way? Certainly. Is there anything about your case that would counsel against waiting for Rahimi or Zirka or the other cases that are trying to interpret the contours of Bruin? Well, if my choice is between a reversal on plain error and awaiting and seeing what happens, I would definitely take a second. Well, I mean, is there anything specific about your case that suggests that we should act? No. I mean, Mr. Rule has completed his sentence. He is obviously- and in fact, his state felony has been expunged. The problem- to the extent that Mr. Rule is suffering from a wrongful conviction, if it is a wrongful conviction, it is the sort of disabilities that run against federal felons and those are definitely meaningful. He'd rather not have those. But he's not in the same situation as a person who, for example, is serving a prison sentence that they arguably should not be. He is limited. I think probably the thing that matters the most to him is that it is actually this conviction is the reason that he cannot get a firearms license. And he is, as is abundantly clear from the record, an avid hunter and fisher and he would like to be able to get back to that. I'm sorry. His underlying forgery conviction has been expunged. Correct. But that was after the indictment was brought in federal court and after his plea. It was while he was serving his sentence. I see. So that does not provide a reason to vacate this conviction. I don't think that it legally does because it was- I mean, he did actually have the conviction at the time that the charges were brought in. He had already applied for the expungement, but it had not been acted upon. I understand. I understand. Yes. Sorry? That's very helpful. Thank you. You're welcome. And I think I've run close to my time, so I'll save the rest of it for rebuttal. Thank you. Thank you. May it please the court. My name is Thomas Alaberti. I'm an assistant United States attorney in the District of Vermont, and I represent the United States of America in this matter. This case is about plain error. Throughout the district court proceedings in this matter, Mr. Rule never challenged the constitutionality of 18 U.S.C. 922-G1 as applied to him or on its face before or after Bruin. As a result, this court should employ the plain error standard to review his belated constitutional claim. May I ask, if we affirm because of the plain error standard, would Mr. Rule have any other form of relief he could seek if the Supreme Court or this court eventually invalidates 922-G1? Not that I'm aware of, no. But I would note that this court has, in two recent summary orders, United States v. Bruin in 2229-56CR and United States v. Stevenson, 2174-CR, this court affirmed convictions under 922-G1 and 922-G3, applying the plain error standard where the appellant raised the constitutional challenges for the first time on appeal. The United States understands these orders are not precedent, but they are persuasive authority and contends that the rationale in these orders, as outlined in the orders, is sound. And if there aren't any questions, the United States would yield its additional time and rely on the wisdom of this recent authority in asking you to affirm Mr. Rule's convictions. I do have a question, though. Do you see, or does the government see, any distinction with respect to what Bruin counsels between 922-G1 and 922-G8, which is at issue in Rahimi? Well, yes. I think what the court was talking about in terms of dangerousness or the dangerousness prong in terms of a law-abiding citizen under the first prong, well, in Rahimi, in the oral argument, they were proceeding under a theory of a responsible person, which they later defined as somebody who was dangerous. That was the inquiry for the first prong, whether the individual fell under the plain text of the Second Amendment. In this case, the distinction is that we're proceeding under the law-abiding citizen. In other words, this person has been previously convicted of a felony offense. And that is the case for Mr. Rule. So there is a distinction between the two there. In terms of the second prong, there is a longstanding history of prohibition of firearms for a individuals who have been convicted of felony-level offenses. That specific quote has been adopted by the Second Circuit in the United States v. Bogle in upholding the constitutionality of 18 U.S.C. 922-G1. Again, if the court doesn't have any further questions, I would yield any further time. Thanks. I don't know what anyone is talking about when they talk about a longstanding tradition of disarming felons in this country after Bruin. The first time any law was passed that generally disarmed felons was 1917. The law that disarmed Mr. Rule was passed in 1961. Bruin is abundantly clear that the latest you're looking at is the Reconstruction era. And for a federal law like this, it is almost definitely right around the time of the founding. At that time, there was no law against felons possessing firearms. The people who were removed from the class of people who could own firearms were enslaved people, Native Americans, Catholics who refused to swear an oath of loyalty to the state, other people who refused to swear an oath of loyalty to the state. That's pretty much it. I just don't understand how you think that cuts, right? Because clearly that is not something that would be acceptable. And there has to be an understanding of broader principles. Sure. Well, first of all, I think that actually you probably could in some circumstances, you could probably disarm people for treason. I'm sorry, disarm people for what? Treason, which is the failing to show loyalty to the state. But what it does show you is what were the concerns of the people of the United States around the time of the founding? Who were the people that were so dangerous that they couldn't have guns? And it wasn't people who committed forgery or other nonviolent crimes. It wasn't even people who were convicted of every crime or every violent crime. They're very specifically worried about arms being used against the state, or you could even say an offense against public order. That's not every felon. It's for sure not every nonviolent felon. And it is even more so not Mr. Rule. So may I ask, in your last moments, the same question I asked your colleague, which is, if we affirm on a plain error standard, is there any other form of relief? I don't believe that there is, Your Honor. Thank you. Thank you both, and we'll take the matter under advisement.